# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

PATRICIA A. JOHNSON,

     Plaintiff,

                               CASE NO.: 6:19-cv-02139-GAP-EJK

v.

WALT DISNEY PARKS AND RESORTS
U.S., INC.,

     Defendant.

_____

## WALT DISNEY PARKS AND RESORTS U.S., INC.'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR") hereby files this Motion for Summary Judgment and Memorandum of Law regarding plaintiff Patricia A. Johnson's claims of disability discrimination under the Florida Civil Rights Act ("FCRA") and the Americans with Disabilities Act ("ADA"),[1] and in support thereof states as follows:

### PRELIMINARY STATEMENT

The crux of plaintiff's disability discrimination claim is that her alleged inability to walk from the employee parking lot to her retail job at Disney Springs

---

[1] Plaintiff's age discrimination claims (Counts II and IV) were dismissed with prejudice. *See* Doc. 31.

led WDPR to terminate her employment after she was on a medical leave of absence for more than a year.[2]  However, discovery has confirmed a fatal defect in her case:  "walking is not [an] issue" for Ms. Johnson.  Although she could have obtained a handicap parking placard to park much closer to work, she admitted she "did not need one."  And even if she did have a disability covered under the state or federal statutes, the accommodations she requests—such as to take a break after walking for two minutes—are unreasonable and make her unqualified for a retail position that requires constant movement throughout the store.

Indeed, just three months before she began working at WDPR's Once Upon a Toy store, Johnson applied for disability benefits and stated under penalty of perjury that she was unable to work.[3]  But that did not prevent her from accepting a retail position with WDPR, and then claiming after working only nine part-time shifts that she could not perform her job because of the parking situation at Disney Springs, even though she frequently used that

---

[2]  *See* Doc. 24, Am. Compl. ¶¶ 45, 78 (alleging in Counts I and III that plaintiff's "physical impairments substantially interfered with [her] ability to traverse the Assigned Route to the Retail Establishment").

[3]  During her deposition, Johnson tried to explain that this "unable to work" statement in her application—for which she has received approximately $20,000 annual benefits for the past six years—actually meant that she could not perform yardwork and housework, not that she was unable to work at a place like WDPR.  Ex. 13, Dep. at 106:2-108:14.  But when counsel for WDPR pressed her on this apparently fraudulent statement, Johnson's attorney instructed her to "plead the fifth" and not answer the question.  *Id.* at 165:23-168:8.

parking lot during the months leading up to her employment.

Johnson's illicit motive became abundantly clear when during her leave of absence, she visited Walt Disney World's ("WDW") theme parks at least 51 times using her *complimentary* employee passes. During these visits, she regularly spent 6 to 8 hours in the parks and waited in lines for up to one hour without a mobility device or other disability accommodation. Clearly, this undisputed evidence shows that Johnson was not disabled under the ADA or FCRA and did not need an accommodation in the first place. It also shows that Johnson used her employee pass to enjoy hundreds of hours of free theme park experiences which entailed mobility and physical strength far exceeding the demands of her job which she falsely claimed she could not do, and without which she would not have had either medical leave or a free pass.

Even assuming that this case was not based on outright fraud and that Johnson could make out a *prima facie* case (which she cannot), there is no genuine factual dispute as to WDPR's position that Johnson's termination was based on a legitimate business reason: she exceeded the maximum 12-month medical leave permitted pursuant to WDPR's policies. In her deposition, Johnson conceded that this was indeed the policy, that she had acknowledged the policy before commencing her employment with the company, and that her leave exceeded the maximum time period set forth in the policy.

Similarly, there is no evidence of pretext regarding Johnson's termination, which was the inexorable result of her leave exceeding 12 consecutive months and her failure to provide a return-to-work date, thereby making the leave indefinite. It is well-established that an employee's violation of a maximum-leave policy constitutes sufficient grounds for termination, which means that no reasonable jury could find that WDPR's decision constituted a pretext for discrimination. Because it is plaintiff's burden to prove pretext in this type of case once the company has articulated a legitimate, non-discriminatory business reason, Johnson cannot prevail, and WDPR is entitled to summary judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are the material facts as to which there is no genuine dispute:

**A.     Johnson Worked at Disney Springs for Approximately Two Months Until Her Extremely Restrictive Limitations Required That She Be Placed on a Medical Leave of Absence**

1.      Disney Springs (formerly Downtown Disney) underwent significant construction to expand the property as early as April 2014, which was ongoing when Johnson began working there at the Once Upon a Toy store in June 2015. Ex. 1, Salisbury Decl. ¶ 3. There were 14 active construction sites and over 4.5 miles of construction walls along Buena Vista drive, which runs alongside the

Disney Springs property. *Id.*

2.    During the construction period, eleven parking lots for Cast Members and guests were closed due to the expanding size of the property and moving the bus loop to the center of the property. Ex. 1, Salisbury Decl. ¶ 4. Cast Members with a disabled person parking placard had access to a parking lot that was very close to the Once Upon a Toy store, but all other employees parked at the other end of the Disney Springs property in parking lot "P." *Id.* ¶¶ 4-5.

3.    It was not physically possible to provide shuttles or other transportation for employees or guests from any parking lot to a desired destination in Disney Springs given the physical obstructions and safety concerns posed by the construction. Ex. 1, Salisbury Decl. ¶ 4. WDPR placed benches throughout the entire property to provide places for employees and guests to rest, including in the pathways between the parking lots and retail stores. *Id.* ¶ 6.

4.    Johnson visited Disney Springs at least every other week (and sometimes each week) while it was under construction as well as before applying to work for WDPR. Ex. 13, Dep. at 53:6-54:1. She also visited the Once Upon a Toy store during this time period. *Id.*

5.    Johnson applied for Social Security disability ("SSDI") benefits just three months before she applied for a job with WDPR. *See* Ex. 13, Dep. at 106:2-

16.  Her SSDI application was based on an alleged disabling condition resulting from an October 28, 2014 car accident.  *Id.* at 106:24-107:5.  She signed the SSDI application under penalty of perjury, swearing:  "I have not and do not expect to work this year, and I did not work in the two prior years."  *Id.* at 107:6-9; Ex. 2, Social Security Application.

6.  After accepting the position to work at WDPR, Johnson received a letter from the Social Security Administration ("SSA") dated June 9, 2015, notifying her that her application for SSDI benefits was approved and that she would receive $1,799 in benefits each month thereafter.  Ex. 3, Notice of Award. The letter stated that the decision to award benefits was based on information provided to the SSA by Johnson.  *Id.* at 2.  Nowhere did the letter indicate that Johnson had since become employed by WDPR.  Ex. 13, Dep. at 164:3-21.

7.  Johnson testified that the only activities she was substantially limited in doing following the October 28, 2014 car accident and at the time of her employment with WPDR were yard work, housework, being on the computer, sitting (from time to time), driving and brushing her teeth.  Ex. 13, Dep. at 173:8-18.  In fact, she admitted that her SSDI application was based on a supposed inability to do yard work and housework, not on an inability to work. *Id*. at 165:23-167:10.

8.  Johnson started working at Once Upon a Toy on June 20, 2015.  Ex.

6

13, Dep. at 54:13-19.  She was hired as a part-time merchandise employee, or "Cast Member," which required her to assist guests, operate the register, stock merchandise, sort and organize inventory, and perform light cleaning, which would involve standing for at least 2 to 3 hours at a time, multitasking, and working in a very fast-paced environment.  Ex. 1, Salisbury Decl. ¶ 7.  Johnson admitted that one of the essential functions of the job was to stand for long periods of time.  Ex. 13, Dep. at 141:17-21; *see* Ex. 4, Job Description.  If an employee cannot work a certain shift or wants to transfer shifts, it is her obligation to contact other employees to cover for her.  Ex. 1, Salisbury Decl. ¶ 8.

9.     Shortly after beginning her employment with WDPR, Johnson claimed that she was suffering pain and numbness in her right leg and could not walk more than 100 yards, which allegedly prevented her from performing her job because she contends that the distance from the regular parking lot for employees to the Once Upon a Toy store was approximately one mile.  Therefore, after working just nine shifts (totaling less than 60 hours), Johnson submitted a Physician's Certification for Employee Accommodations Form from her chiropractor which requested a 15-minute seated break after standing for three hours and a break after walking 100 yards (Ex. 1, Salisbury Decl. ¶ 9), a distance Johnson testified would take less than two minutes to traverse.  Ex. 13, Dep. at 142:4-143:12.

10.     Johnson never tried to use a mobility device to get to work or while at work because she said she "did not need one."  Ex. 13, Dep. at 131:15-19.

11.     Johnson also never possessed or applied for a disabled person parking placard for her car because she never felt like she needed one.  Ex. 13, Dep. at 43:5-15.  In fact, when asked why she did not obtain a parking placard, she said "walking was not the issue."  *Id*.  Although WDPR had a parking lot for employees with disability parking placards located a short distance from the Once Upon a Toy store (Ex. 1, Salisbury Decl. ¶ 5), Johnson chose to park in the regular parking lot which was much farther away.

12.     Given the severe limitations on standing and walking set forth in Johnson's Physician's Certification for Employee Accommodations Form, WDPR determined that she could not perform the essential functions of her job at Once Upon a Toy, with or without a reasonable accommodation.  Ex. 1, Salisbury Decl. ¶ 10.  As a result, WDPR placed her on a medical leave of absence, as an accommodation, on August 28, 2015.  *Id*.; Ex. 5, Def.'s Interrog. Responses at 13-14 (Response to Renumbered Interrog. No. 25).

13.     On August 10, 2016, Johnson's chiropractor updated her restrictions to state that she could not walk for more than 9 minutes and that she would need a 5-minute rest period after walking 400 yards.  Ex. 1, Salisbury Decl. ¶ 11.  For a Cast Member at the Walt Disney World Resort, these limitations were equally, if

not more, restrictive than the prior ones.  *Id.*

**B.    WDPR Engaged in Extensive Efforts To Find a Position for Johnson That Would Satisfy Her Supposed Restrictions**

14.    While Johnson was on a leave of absence, WDPR engaged in extensive efforts to re-cast her into a role that would satisfy her purported restrictions, which included vetting 18 open positions.  Ex. 1, Salisbury Decl. ¶ 12; Ex. 5, Def.'s Interrog. Responses at 13-14 (Response to Renumbered Interrog. No. 25).

15.    Johnson was assigned a Case Advocate, Bonnie Siracuse, who regularly spoke to Johnson during her leave of absence and who, along with multiple other employees, reviewed each open position to determine whether it would satisfy Johnson's restrictions.  Ex. 1, Salisbury Decl. ¶ 12; Ex. 13, Dep. at 133:5-15.

16.    But given the extremely restrictive limitations Johnson alleged she had—which would essentially require her to sit for five minutes for every 1.7 minutes of walking (as she conceded in her deposition)—none of the open positions satisfied her restrictions.  Ex. 1, Salisbury Decl. ¶ 12; Ex. 6, Brass Ring File; Ex. 13, Dep. at 142:4-143:12.

17.    During her leave of absence, Johnson visited the WDW theme parks at least 51 times using the complimentary passes provided to her as a Cast Member, even though she was purportedly unable to work due to an alleged

disability that impacted her ability to walk and stand.  Ex. 13, Dep. at 62:5-23; Ex.

7, Pass Usage Data.  Johnson regularly spent 6 to 8 hours in the parks and waited

in lines for up to one hour without a mobility device or other disability

accommodation.  Ex. 13, Dep. at 56:18-24, 68:8-12.  This required extensive

walking and standing.  Just two days after Johnson's chiropractor completed her

initial disability accommodation form which identified certain walking and

standing restrictions, Johnson spent a full day visiting Magic Kingdom, Disney's

Animal Kingdom, and Disney's Hollywood Studios.  *Id*. at 54:20-56:17.

**C.     Johnson's Employment Was Terminated After Her Leave of Absence
         Exceeded the Maximum Leave Permitted under WDPR's Policies**

18.     Pursuant to WDPR's policies, an approved medical leave of absence

is limited to 12 consecutive months.  Salisbury Decl. ¶ 14.  In relevant part, the

Employee Handbook states:

> Approved medical leaves may last for up to 12 consecutive months,
> or if the leave is taken in shorter periods, for up to 15 months during
> a 24-month period. . . .
>
> Employees who remain away from work without obtaining a timely
> extension of their leave will be considered to be on an unauthorized
> leave and are subject to termination. . . .
>
> Employees who are nearing 12 months of consecutive leave (or 15
> months of intermittent leave) should contact Leave Administration
> to discuss their ability to return to work and their timeframe for
> returning. If additional leave is requested, the Company will refer
> the matter to HR/Employee Relations, who will consider the
> employee's expected timeframe for being able to return to work, the
> needs of the business and any legal requirements.  The Company

will not grant requests for indefinite leave.

Ex. 8, Walt Disney World Employee Handbook at 36-37; *see* Ex. 9, WDW 2004

Employee Manual at 78-79.

19.     Johnson acknowledged WDPR's maximum-leave policy when she

was hired.  Ex. 13, Dep. at 134:17-135:13; Ex. 10, Employee Manual

Acknowledgement.  She also received a letter from WDPR dated August 29,

2015, which reiterated that employees who are absent from work due to a

medical leave of absence for 12 months will be subject to termination of

employment, and that employees should notify their managers of their intent to

return to work at the earliest possible time prior to the expiration of the leave.

Ex. 11, August 28, 2015 Letter.

20.     Johnson's leave exceeded 12 consecutive months on August 28, 2016.

Ex. 1, Salisbury Decl. ¶¶ 10, 14.  On September 1, 2016, WDPR's Leave

Administration department sent a letter to Johnson, notifying her that she had

exceeded the maximum leave allowable under the policy and requesting that she

contact WDPR within 15 days if she was able to return to work.  *Id.* ¶ 15; Ex. 12,

September 1, 2016 Letter.  The letter also stated that if she was unable to return to

work, her separation would be processed on September 21, 2016.  Ex. 1, Salisbury

Decl. ¶ 15; Ex. 12, September 1, 2016 Letter.

21.     WDPR never received a response to the September 1st letter nor was

otherwise informed by Johnson that she was able to return to work.  Ex. 1, Salisbury Decl. ¶ 15.

22.     Because Johnson had been on a medical leave of absence for more than a year which exceeded the maximum time set forth in WDPR's policy, did not provide a return to work date, and did not obtain an extension of her leave before the end of the previously-approved leave period, her separation from employment was effective as of September 22, 2016.  Ex. 1, Salisbury Decl. ¶¶ 15-17; *see* Ex. 5, Def.'s Interrog. Responses at 7-8 (Response to Renumbered Interrog. No. 6 (subpart b)).

23.     Johnson confirmed that neither she nor any of her doctors provided WDPR a return-to-work date and that she never contacted the Leave Administration department or her managers at Once Upon a Toy to discuss being added back to the schedule.  Ex. 13, Dep. at 143:13-144:8, 151:14-24.  She also admits that her leave of absence exceeded 12 months and that she had in fact not returned to work as of September 23, 2016.  *Id*. at 143:13-144:8, 150:18-151:24.

24.     There is no evidence that WDPR treated other employees who violated the company's leave policy any differently than WDPR treated her.

25.     At the time of her separation, Johnson was given a positive re-hire status with WDPR.  Ex. 13, Dep. 153:15-25.  Johnson was aware of her positive re-hire status in WDPR's system, but never reapplied to work for WDPR at any

time thereafter.  *Id*. at 153:22-154:3.  Nor has she sought any other employment in the four-and-a-half years since her separation.  *Id*. at 153:10-14.  When Johnson's doctors asked about her employment status, she said that she was "retired."  *Id*. at 109:17-111:18.

26.     Johnson did not complain of any discrimination during her employment, and there is no evidence that anyone at WDPR made any derogatory or offensive comments to her about her medical condition or alleged disability.  Ex. 13, Dep. at 152:21-153:3.

## LEGAL STANDARD

Summary judgment is appropriate where, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" only if its resolution could affect the outcome of the suit, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through affirmative evidence or by showing there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, when the non-moving party bears the burden of proof on an issue, the moving party need not support

its motion with affidavits or other material negating the opponent's claim but instead may simply point out the lack of evidence supporting their case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

When the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial, the non-moving party cannot rely on "a mere scintilla of evidence" supporting its position. *Walker v. Darby*, 911 F. 2d 1573, 1576-77 (11th Cir. 1990) (internal quotations omitted). Rather, for a court to find a genuine issue for trial, the non-moving party must establish, "through the record presented to the court, that it is able to prove evidence sufficient for a reasonable jury to return a verdict in its favor." *Cohen v. United Am. Bank*, 83 F. 3d 1347, 1349 (11th Cir. 1996). Such circumstances do not exist here.

## ARGUMENT

Courts apply a burden-shifting analysis to ADA and FCRA claims. *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 926 (11th Cir. 2019).[4] Under this analysis, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that she: (1) had a disability; (2) was a qualified individual; and (3) was subjected to discrimination because of her disability. *Id.*; *see Batson v. The Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018). If a *prima facie* case is

---

[4] "The Florida courts have recognized . . . that actions under the Florida Civil Rights Act are analyzed under the same framework as the ADA." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000).

established, the employer must then offer a legitimate, nondiscriminatory reason for the employment decision to rebut the presumption of discrimination. *Monroe*, 793 F. App'x at 926.

If the employer successfully rebuts the presumption, the plaintiff is given an opportunity to present evidence that the employer's proffered reason was merely a pretext for discrimination.  *Id.*  This requires the employee to present evidence that would permit a trier of fact to conclude that the explanation given for the decision is false and that the real reason for the decision was her disability.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000); *Wood v. Calhoun Cty.*, 626 F. App'x 954, 956 (11th Cir. 2015) (per curiam).  No such evidence exists here.

WDPR is entitled to summary judgment because plaintiff cannot establish a *prima facie* case of disability discrimination, and even if she could, she cannot carry her burden of showing that WDPR's legitimate, non-discriminatory reason for terminating her employment was false and a pretext for discrimination.

**I.**     **PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION**

**A.**     **Johnson Is Not Disabled for Purposes of Her Discrimination Claim Under the ADA or FCRA**

A disability is defined as a physical or mental impairment that substantially limits one or more major life activities.  *Fikes v. Wal-Mart, Inc.*, 322 F.

App'x 882, 884 (11th Cir. 2009) (per curiam).  When Johnson requested an accommodation from WDPR, her restrictions related to a purported inability to walk even 100 yards without a break or stand for extended periods of time.  *See* Defendant's Statement of Undisputed Material Facts ("DSUF") ¶ 9.  But the undisputed evidence proves that she had no such substantial limitation in her ability to walk or stand for long periods of time.  In fact, during her deposition, Johnson made the following fatal admissions:

- Johnson admitted that "walking was not the issue."  DSUF ¶ 11.

- When asked whether there are any activities she is substantially limited in doing, she did not identify walking or standing.  *Id.* ¶ 7.

- Johnson conceded that she never tried to use a mobility device to or from the Disney Springs parking lot or while at work because she said she "did not need one."  *Id.* ¶ 10.

- Johnson testified that she has never sought to obtain a disability placard for her car because she "did not need one."  *Id.* ¶ 11.

Beyond these concessions, Johnson's visits to the WDW theme parks during her medical leave of absence (a complimentary benefit that she received as a WDPR employee) disprove any claim that she suffered from a physical impairment that substantially limited her ability to walk or stand.  While Johnson was allegedly unable to walk from the parking lot to work, she visited the theme

parks no less than *51 times* during her leave of absence. *Id*. ¶ 17. And just two days after Johnson's chiropractor submitted her purported restrictions on walking and standing at work, Johnson spent a full day visiting WDW's Magic Kingdom, Animal Kingdom, and Hollywood Studios. *Id.* Johnson's suggestion that she could not walk to and from the regular parking lot to Once Upon a Toy for her work shift[5] is undermined by the fact that she was able to enjoy a full day of walking and standing in long lines at three theme parks without a mobility device or other disability accommodation. *Id*.[6]

Johnson's failure to demonstrate a substantial limitation is similar to the plaintiff's circumstances in *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882 (11th Cir. 2009). In *Fikes*, the plaintiff alleged he "suffer[ed] pain when sitting or standing for 'long periods' and also when he ben[t], kne[lt], walk[ed], lift[ed], or climbed 'excessively.'" *Id*. at 884. The evidence demonstrated, however, that the plaintiff was able to engage in a "broad range of activity . . . [that] stands in stark contrast to—and belies—Plaintiff's vague assertions that he is restricted in the major life activities of working and performing manual tasks." *Id.* Indeed, the plaintiff

---

[5] WDPR had a closer parking lot for employees who have disabled parking placards. DSUF ¶¶ 2, 11. If Johnson actually had a walking limitation which required a handicap placard, then she could have obtained one and used the closer lot. That she did not (because "walking was not the issue" for her (*id*. ¶ 11)), further shows the specious nature of her allegations in this case.

[6] Even if Johnson had some difficulty walking from the parking lot, WDPR placed benches between the parking lot and the stores for Cast Members (like Johnson) to be able to rest during the walk to their workplace. DSUF ¶ 3.

was able to perform household activities and "drive his car (without [the] benefit of a handicap placard)." *Id.* The Eleventh Circuit thus found that while the plaintiff "suffered some limitation of a major life activity," that was "not enough" because "the limitation must be substantial." *Id.* Similarly here, the undisputed facts relating to Johnson's conduct during her leave of absence (*e.g.*, DSUF ¶ 17), along with her admissions under oath, demonstrate that any alleged limitations in walking or standing were in no way substantial enough to constitute a disability within the meaning of the ADA or FCRA.

   **B.   Johnson Was Not a Qualified Individual Because She Could Not Perform the Essential Functions of Her Job and Her Requested Accommodations Were Not Reasonable**

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Santandreu v. Miami Dade Cty.*, 513 F. App'x 902, 905 (11th Cir. 2013) (per curiam) (internal quotations omitted). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Id.* (citations omitted). Accommodations sought by a qualified individual must be "reasonable." *Mattingly v. Univ. of S. Fla. Bd. of Trs.*, 931 F. Supp. 2d 1176, 1184 (M.D. Fla. 2013).

   It is undisputed that Johnson could not perform the essential functions of

her job given her requested accommodations.  A merchandise Cast Member's essential job functions include assisting guests, operating the register, stocking, working with inventory and performing light cleaning, which involve constant walking throughout the store and standing for extended periods of time.  DSUF ¶ 8.  Johnson could not perform these job functions if she was required to take a break every time she walked 100 yards, which she testified amounts to a break after two minutes of walking.  *Id*. ¶¶ 9, 12, 16.  When her chiropractor amended her purported restrictions, they became even more restrictive because they required that she take a 15-minute break after walking for less than 9 minutes. *Id*. ¶ 13.  Given the essential job functions of the position that Johnson applied for and accepted, her requested accommodations are plainly unreasonable.[7]

Johnson's purported restrictions also prevented her from being able to perform the essential duties of any of the 18 open positions WDPR identified during her leave of absence.  *Id*. ¶ 14.  WDPR made every effort to find her a job during this one-year period because of Johnson's alleged disabilities (*id.* ¶¶ 14-15), but discovery has proven without a doubt that Johnson was lying all along about her purported inability to stand and walk.  *Id*. ¶¶ 7, 11, 17.

---

[7] WDPR provided Johnson with a reasonable accommodation by placing her on a leave of absence when she acknowledged that she could not perform the essential functions of her job. *See* DSUF ¶ 12; *Jacobs v. Lockheed Martin Corp.*, 2016 WL 11544772, at *12 (N.D. Ga. Sept. 23, 2016) (citing *Wood v. Green*, 323 F.3d 1309, 1313-14 (11th Cir. 2003)) (recognizing that federal courts have found that a leave of absence can be a reasonable accommodation).

Nonetheless, based on what Johnson represented to WDPR, there was no other available position which could have been offered to her at a company whose operation of theme parks, resorts and retail establishments demand on-your-feet customer service from nearly all its Cast Members.  This case is similar to *Santandreu v. Miami Dade County*, where the plaintiff unsuccessfully argued that the defendant should have offered him a different position.  513 F. App'x at 906.  The Eleventh Circuit held that there was no violation of the ADA because plaintiff's medical condition prevented him from performing the essential duties of any other role.  *Id.*  Applying the holding in *Santandreu* to the facts here, Johnson led her employer to believe she could not perform the essential duties of any other open and available position and was thus not qualified for any other role.  Nor was Johnson entitled to a role that was not available.  *See*, *e.g.*, *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (holding the ADA "does not require the employer to bump another employee from a position in order to accommodate a disabled employee").

Johnson's request for indefinite leave is also unreasonable.  At the time of her termination, it was no more likely that WDPR could find a position for her in the future.  In fact, she had failed to contact WDPR's Leave Department to discuss her ability to return to work or a time frame for returning (as required by company policy), and she never reached out to her managers at Once Upon a

Toy about being added to the schedule.  DSUF ¶¶ 18, 21, 23.  Because her return-to-work date was indefinite and her leave of absence exceeded company policy with no end in sight, any additional leave extension would be unreasonable.  *E.g.*, *Wood*, 323 F.3d at 1314 (recognizing that requests for indefinite leave so an employee can "work at some uncertain point in the future" are inherently unreasonable"); *Santandreu*, 513 F. App'x at 906 (holding that the plaintiff's request for additional leave was not reasonable because the plaintiff "was unable to show that he would be able to perform the essential functions of the job anytime in the reasonably immediate future").  Johnson therefore cannot establish a *prima facie* case of disability discrimination.[8]

## II.   WDPR HAD A LEGITIMATE, NONDISCRIMINATORY REASON FOR TERMINATING JOHNSON'S EMPLOYMENT

Even if Johnson could establish a *prime facie* case of disability discrimination (which she cannot), WDPR terminated Johnson for legitimate, nondiscriminatory reasons.  As explained *supra*, WDPR's sole reason for terminating Johnson was that she exceeded the 12-month maximum time permitted for a medical leave of absence under WDPR's policy as set forth in the

---

[8]  *See Monroe*, 793 F. App'x at 927 (holding that plaintiff could not establish a prima facie case of disability discrimination based on his termination where the plaintiff's doctor "did not give, and could not have given, a date when [plaintiff] could return to work . . . [o]ur case law is clear that indefinite leave is not a reasonable accommodation"); *Mecca v. Fla. Health Servs. Ctr., Inc.*, 2014 WL 408431, at *4 (M.D. Fla. Feb. 3, 2014) (concluding that the plaintiff's separation did not amount to disability discrimination under the ADA or FCRA in part because "indefinite and indeterminable leave is not a reasonable accommodation").

employee handbook.  DSUF ¶ 22.[9]  All WDPR employees (including Johnson) are made aware of and are subject to this policy.  Indeed, Johnson signed a written acknowledgement that she had read and agreed to abide by this policy before she even started working for WDPR.  *Id.* ¶ 19.  Johnson also received (and kept) a letter from WDPR the day after her medical leave of absence began that reminded her of this policy and her obligation to notify her managers of any intent to return to work prior to the expiration of the leave.  *Id.*

Johnson failed to comply with these requirements.  She did not contact WDPR Leave Administration or her managers to discuss any ability to return to work or her timeframe for returning to work when she was approaching the 12-month deadline.  *Id.* ¶ 23.  She also failed to provide a return-to-work date or to contact anyone at Once Upon a Toy about being put back on the work schedule.  *Id.*  It is therefore not surprising that Johnson admitted during her deposition that her leave of absence exceeded 12 months and that she had in fact not returned to work as of September 23, 2016.  *Id.*  As a result, WDPR has satisfied its "exceedingly light burden of producing [a] legitimate, non-discriminatory reason" to terminate Johnson, whose leave of absence had exceeded the

---

[9]  Johnson claims that she never received WDPR Leave Administration's September 1st letter notifying her that she exceeded the 12-month maximum leave period and that a different letter (which she produced in discovery) was sent after she had been terminated.  This is a red herring because the second letter, apparently sent out one day after she was terminated, was sent to the same address as the first letter.  Additionally, sending the second letter was a clerical error, not the result of any discrimination based on Johnson's alleged disability.

company's maximum leave period and who had not provided a return-to-work date at the time of her termination. *Crowley v. OSI Rest. Partners, LLC*, 907 F. Supp. 2d 1318, 1324 (M.D. Fla. 2012) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).

Terminating an employee for exceeding a maximum permitted leave of absence is, as confirmed by other courts, a legitimate, nondiscriminatory reason for termination. *E.g.*, *McIntyre v. San Antonio Water Sys.*, 2017 WL 1532608, at *9 (W.D. Tex. Apr. 26, 2017) (holding defendant provided a legitimate, nondiscriminatory reason for terminating an employee who had "exhaust[ed] the maximum allowable leave under [defendant's] policies"); *Kucharski v. Cort Furniture Rental*, 594 F. Supp. 2d 207, 211 (D. Conn. 2008), *aff'd*, 342 F. App'x 712 (2d Cir. 2009) (concluding defendant's application of its leave policy to discharge employees who were unable to return to work after exhausting their leave was a "legitimate justification for plaintiff's termination"). As the Eleventh Circuit has "reiterated multiple times," "[w]e do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Connelly v. WellStar Health Sys.*, 758 F. App'x 825, 829 (11th Cir. 2019) (alteration in original) (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)).

Because WDPR had "an honest belief" that Johnson violated its leave policy by remaining on a leave of absence for more than 12 months, with no end in sight, there is no dispute that there was a legitimate reason for her termination. *Connelly*, 758 F. App'x at 829; *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019).

## III. THERE IS NO EVIDENCE THAT WDPR'S LEGITIMATE, NONDISCRIMINATORY REASON FOR TERMINATING JOHNSON WAS PRETEXTUAL

There is simply no evidence that would permit a trier of fact to conclude that WDPR's reasoning for terminating Johnson is false and that the real reason for her termination was her alleged disability. *See Wood*, 626 F. App'x at 956. To defeat summary judgment, Johnson "must introduce *significantly probative* evidence" demonstrating that WDPR's legitimate, nondiscriminatory reason for terminating her employment is both false and that discrimination was the real reason. *Velez v. Sprint/United Mgmt. Co.*, 2020 WL 8224605, at *4 (M.D. Fla. Dec. 15, 2020) (emphasis added) (internal quotations omitted); *see Lopez v. AT&T, Corp.*, 457 F. App'x 872, 874–75 (11th Cir. 2012) (per curiam).

Johnson has not produced *any* evidence, let alone evidence that is

"significantly probative," that WDPR's termination decision was false or based on discrimination. What's false is Johnson's alleged inability to walk or stand for more than a few minutes, which has cost WDPR time and money in this litigation and fraudulently led the State of Florida to pay her $20,000 annually in disability benefits. She should be held responsible for her conduct, but to complete the legal analysis in this case, Johnson admitted that she violated WDPR's leave policy and has no evidence that other employees were treated differently. DSUF ¶¶ 18, 23-24; *see Lopez*, 457 F. App'x at 875 (explaining that the "'work rule' defense may be pretextual" if the plaintiff demonstrates she did not violate the work rule or, if she did, that other employees "outside the protected class, who engaged in similar acts, were treated differently"). Johnson also never complained of discrimination during her employment, and there is no evidence that anyone at WDPR made any derogatory or offensive comments to her about her medical condition or alleged disability. DSUF ¶ 26. Johnson's failure to establish a triable issue as to pretext compels summary judgment for WDPR. *See Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 952 (11th Cir. 2016).

## CONCLUSION

For all the foregoing reasons, WDPR respectfully requests that summary judgment be granted in its favor.

Dated:  March 1, 2021                    Respectfully submitted,


                                         */s/ Jeremy White*
                                         Jeremy White (admitted *pro hac vice*)
                                         McDermott Will & Emery LLP
                                         500 North Capitol Street NW
                                         Washington, D.C. 20001
                                         Telephone:  (202) 756-8694
                                         Facsimile:  (202) 756-8087
                                         jmwhite@mwe.com

                                         Audrey Pumariega (Fl. Bar. No. 85206)
                                         McDermott Will & Emery LLP
                                         333 SE 2nd Ave, Suite 4500
                                         Miami, FL 33131
                                         Telephone:  (305) 329-4421
                                         Facsimile:  (305) 347-6500
                                         apumariega@mwe.com

                                         *Attorneys for Defendant*
                                         *Walt Disney Parks and Resorts U.S., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all Counsel of Record.


*/s/ Jeremy White*
Jeremy White